UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| MARIO J.A. SAAD, MD PhD, <br>     Plaintiff, <br><br> v. <br><br> AMERICAN DIABETES ASSOCIATION, <br>     Defendant. | Civil Action No. 15-cv-10267-TSH |

**DEFENDANT AMERICAN DIABETES ASSOCIATION'S
MEMORANDUM OF REASONS IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant American Diabetes Association ("ADA") hereby submits this memorandum of reasons in support of its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to the Verified Complaint filed by the plaintiff Mario J. A. Saad, MD PhD. Plaintiff's Verified Complaint alleging a single count of defamation must be dismissed given that it fails to allege fault by the ADA and is devoid of any facts or reasonable inferences that plausibly support his claim. Even if an allegation of fault can be divined from the Verified Complaint, the ADA's Expression of Concern is protected opinion which provides a separate and independent basis requiring dismissal.

**STATEMENT OF FACTS**

As alleged in the Verified Complaint,[1] plaintiff is a professor of medicine currently employed by the State University of Campinas in Brazil (the "University"). Verified Complaint (Compl.), ¶ 6. ADA is the nation's largest non-profit organization dedicated to diabetes. Its mission is to prevent and cure diabetes and to improve the lives of all people affected by

---

[1] Setting aside any disputes ADA has with plaintiff's verified allegations, the facts as alleged by the non-moving plaintiff are stated as true for purposes of this motion. *Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998).

1

diabetes.  *See* http://www.diabetes.org/donate.  ADA publishes several peer-reviewed scientific journals, among them *Diabetes* ®.  Compl. ¶ 10.  *Diabetes* published articles written by plaintiff in 1997, 2006, 2007, and 2011.  *Id.* ¶¶ 13-16. In March 2014, the ADA informed plaintiff that two of the articles he authored and which were published in *Diabetes* in 2007 and 2011 appeared to contain instances of image manipulation and duplication that violate the journal's publication policies.  *Id.* ¶ 17.  The "Publication Policies and Procedures for *Diabetes*" contain a list of common forms of scientific misconduct, one of which is digital image manipulation. *See also* Stop Misbehaving, J. Clin. Invest. 116:1740-41 (2006) (containing examples of improper digital manipulation).  The ADA asked plaintiff to respond to its inquiry.  Compl. ¶ 17.

After an exchange of information between the parties, the ADA concluded that plaintiff had failed to adequately address the ADA's concerns about whether image manipulation and duplication had occurred in violation of Diabetes' publication policies.  *Id.* ¶ 19.  In response to a request by the ADA, the University initiated its own investigation in April 2014.  *Id.* ¶ 21.  In June 2014, the University concluded that "mistakes had occurred in the treatment of the digital images, identification methods, storage and manipulation of the laboratory images" contained in the 2007 and 2011 articles authored by plaintiff.  *Id.* ¶ 23.  The University also found that the scientific results presented in the articles were not compromised by those mistakes, and found no evidence of dishonesty on plaintiff's part.  *Id.* ¶¶ 23-24.

In October 2014, the ADA informed plaintiff that the 1997 and 2006 *Diabetes* articles co-authored by plaintiff also appeared to contain instances of inappropriate image duplication.  The ADA asked for a response to these allegations, which plaintiff provided later that same month.  *Id.* ¶¶ 27-28.

In December 2014, the ADA informed plaintiff that it had completed its review of the

University's report regarding the 2007 and 2011 articles, as well as the responses to the issues raised with respect to the 1997 and 2006 articles. *Id.* ¶ 29. The ADA informed plaintiff that it was publishing online a digital Expression of Concern about plaintiff's articles on December 15, 2014. *Id.* ¶ 30. *See generally* Committee on Publication Ethics, Retraction Guidelines, *available at* http://publicationethics.org/files/retraction%20guidelines.pdf.

The ADA posted a digital Expression of Concern on its website on February 2, 2015. Compl. ¶ 34; Answer ¶ 34. The ADA also published a hard-copy of the Expression of Concern in the March issue of *Diabetes*, which was released on or about February 24, 2015. *Id*. The Expression of Concern as published on the ADA's website and as it appears in the hard-copy journal are identical and a true and accurate copy of the Expression of Concern is attached as Exhibit L to the Verified Complaint. *Id*.

## ARGUMENT

### I. STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006). In order to survive such a motion based on a failure to state a claim, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court*

*of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). A Rule 12(c) judgment will be granted if the pleadings demonstrate that taking the facts in a light most favorable to the nonmoving party, that the pleader cannot recover on its claims, and that the moving party is entitled to a judgment as a matter of law. *Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998) ("Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief.").

In a matter concerning a claim of defamation against an established publisher, the court serves an important gatekeeping function because summary disposition of such claims are "especially favored" in Massachusetts as a meritless case puts "an unjustified and serious damper on freedom of expression" and "the costs of litigation may induce an unnecessary and undesirable self-censorship." *King v. Globe Newspaper Co.*, 400 Mass. 705, 708, 512 N.E.2d 241, 243 (1987); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1245 (2004) ("[T]he standard for successfully pleading defamation tends to be more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage…vexatious litigation."). Thus, in carrying out its review of the Verified Complaint alleging a single count of defamation, the court may take into consideration the First Amendment's protection against the chilling of protected speech.

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff has alleged a single count of defamation. The elements of a defamation claim under Massachusetts law are:

> (1) that "[t]he defendant made a statement, concerning the plaintiff, to a third party"; (2) that the statement was defamatory such that it "could damage the plaintiff's reputation in the community"; (3) that "[t]he defendant was at fault in making the statement"; and (4) that "[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss."

*Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (alterations original) (quoting *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30; 782 N.E.2d 508, 510-11 (2003). Almost without exception, "[t]ruth is an absolute defense to a defamation action under Massachusetts law." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 42 (1st Cir. 2006). Statements of pure opinion are also constitutionally protected. "The [Supreme] Court has . . . held that only statements that present or imply the existence of facts that can be proven true or false are actionable under state defamation law." *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990)); *see also Levinsky's, Inc. v. Wal-Mrt Stores*, 127 F.3d 122, 127 (1st Cir. 1997) ("[A] statement normally is not actionable unless it contains an objectively verifiable assertion."). Accordingly, "[a]n 'expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation.'" *Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (quoting *Dulgarian v. Stone*, 420 Mass. 843, 850-51; 652 N.E.2d 603, 608 (Mass. 1995)). In short, a statement "is not actionable if 'it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.'" *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (quoting *Gray*, 221 F.3d at 248). "As the Ninth Circuit has explained, 'when an author outlines the facts

available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.'" *Id.* (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995)).

> A. **Plaintiff's Defamation Claim Should Be Dismissed Because He Has Failed to Allege Any Fault on the Part of the ADA**

As recognized by this Court in its Order denying Plaintiff's Motion for Reconsideration (ECF No. 17), a "defamation plaintiff must show 'that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." *Id.* (citing *Stanton v. Metro Corp.*, 438 F.3d. 119, 124 (1st Cir. 2006)). The Verified Complaint fails to allege that the ADA was at fault or otherwise violated any standard of care with respect to its publication of the Expression of Concern. Indeed, the Verified Complaint is oddly devoid of any allegation, analysis, or discussion of the content of the Expression of Concern and makes no suggestion that any statement in the Expression of Concern is false, incorrect, or would otherwise hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community. The specific allegations of the plaintiff's defamation count, paragraphs 37-43, likewise contain no allegation of element of fault and fail to allege that the ADA acted negligently or with actual malice in publishing the Expression of Concern, the two potentially applicable standards of fault in a defamation action. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (states may not impose liability without proof of fault in defamation cases); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 858, 330 N.E.2d 161, 168 (1975) (private figure libel plaintiff must prove statement was negligently made; public official and public figures must prove actual malice). A searching review of the

Verified Complaint yields no other allegations of fault with the singular exception of the introductory paragraph which blithely states that the ADA "has wrongfully published a digital expression of concern" without any further allegations of what action on the part of the ADA was wrongful or which statements in the Expression of Concern were objectionable. However, a conclusory label such as "wrongful" without any context or plausible facts supporting it is inadequate to state a claim. *Twombly*, 550 U.S. at 555. Without alleging that the ADA was at fault in its publication of the Expression of Concern, plaintiff has failed to plead a critical element in his claim of defamation and the Verified Complaint should be dismissed.

### B. The Expression of Concern Is Protected Opinion

Even if the Verified Complaint is somehow interpreted to allege fault on the part of the ADA, plaintiff's claim would still be subject to dismissal on the basis that the Expression of Concern is protected opinion. The Supreme Judicial Court, in a case involving the application of defamation law in Massachusetts concerning allegedly defamatory opinions published in *Boston Magazine,* reiterated that: "'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. . . .'" *Myers v. Boston Magazine Co.*, 380 Mass. 336, 338, 403 N.E.2d 376, 377-78 (1980) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (footnote omitted)). The *Boston Magazine* case, concerning a popular magazine rather than an academic journal, is instructive here. In *Boston Magazine*, the Supreme Judicial Court reviewed a statement in the magazine's annual survey of the "Best & Worst" of Boston after plaintiff, a television sports news announcer, was aggrieved by the statement: "*Worst*: Jimmy Myers, Channel 4. The only newscaster in town who is enrolled in a course for remedial speaking." *Id.* at 341. In affirming a motion for summary judgment for the defendant, the Supreme Judicial Court outlined the approach to be taken when reviewing whether an

7

allegedly defamatory opinion is actionable.

> The test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Id*. at 341-42. After analyzing the context of the statement, including the fact that the statement was in a section of the magazine entitled, "Best & Worst: Sports," and was accompanied by humorous cartoons, the Court determined that claims were properly dismissed as an expression of opinion rather than defamation based upon undisclosed facts. *Id.*

In the present case, the Expression of Concern is identified as an opinion (i.e., concern) in its title and states that the ADA "is issuing this expression of concern to alert readers to questions about the reliability of data" in plaintiff's articles. Exhibit L to the Verified Complaint. As this Court recognized in its Order denying Plaintiff's Motion for Reconsideration (ECF No. 17), the "statement thoroughly sets forth the factual basis for the ADA's concerns, and states that *Diabetes* 'will make final decisions on these articles after the journal obtains more information on the reliability of the data and conclusions presented in each article.'" Moreover, as alleged in the Verified Complaint and is evident from the Expression of Concern, prior to publishing its statements, the ADA spent almost a year investigating the allegations first raised by readers of *Diabetes*; which investigation was undertaken by its Panel on Ethical Scientific Programs following the guidelines of the Committee on Publication Ethics (COPE) all the while affording plaintiff ample opportunity to respond. Compl.¶¶ 17-20, 28-30, Exhibit L; Committee on Publication Ethics, Retraction Guidelines, *available at*

http://publicationethics.org/files/retraction%20guidelines.pdf; *see also* Melissa L. Markey, *Scientific Misconduct in Research*, 1 J. Health & Life Sci. L. 63, 91 & nn. 142-43 (2007) (discussing COPE's role in addressing misconduct in scientific publications).

More to the point, the Verified Complaint fails to allege that any disclosed facts in the Expression of Concern are defamatory or false. Plaintiff does not even allege that the Expression of Concern taken as whole is somehow defamatory by implication. Rather, plaintiff only alleges that, "The ADA's digital (currently posted) expression of concern, soon to be published hard-copy expression of concern and potential retraction of the articles have and will continue to severely damage Dr. Saad's professional reputation." Compl. ¶ 35; *see also id.* ¶ 43. Plaintiff apparently arrives at the conclusion that the Expression of Concern is potentially damaging to his professional reputation because, at its essence, the ADA is expressing concern "about the reliability of data" in four articles authored by plaintiff.

However, even when an opinion is "derogatory" – such as was the case when *Boston Magazine* expressed its opinion the Jimmy Meyers was the "worst" sportscaster in Boston – Massachusetts law is absolutely clear that a simple expression of opinion based on disclosed or assumed nondefamatory facts is not sufficient for an action of defamation. *Myers*, 380 Mass. at 339 (citing Restatement (Second) of Torts § 566 (1977)). Plaintiff's allegation that the ADA's concern about the reliability of the data in plaintiff's articles is harmful to his own reputation does not salvage his claim. The law does not proscribe truthful speech just because it may be harmful to one's professional reputation. Rather, the law as a whole encourages the dissemination of such ideas and opinions so that the scientific method can be properly applied by testing reported data to ascertain whether it is accurate. *See, e.g.*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (recognizing that "[s]cientific methodology today is

based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry" when addressing the admissibility of scientific expert opinion testimony) . Clearly the speech at issue in the instant case, alerting scientists attempting to cure diabetes and doctors attempting to treat their patients about potentially duplicated and manipulated images in articles authored by plaintiff and published in *Diabetes*, is necessary for the proper functioning of the scientific method – even if the ideas and opinions advanced by the ADA about the reliability of data in the articles are incorrect (which plaintiff did not allege).  As Justice Oliver Wendell Holmes, Jr. stated in a renowned dissent of a Supreme Court opinion upholding the conviction of leafleteers railing against the United States' efforts to impede the Russian Revolution,

> the ultimate good desired is better reached by free trade in ideas – that the best test of truth is the power of the thought to get itself accepted in the competition of the market . . . .  I think that we should be eternally vigilant against attempts to check the expression of opinions that we loathe and believe to be fraught with death, unless they so imminently threaten immediate interference with the lawful and pressing purposes of the law that an immediate check is required to save the country.

*Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).  As plaintiff only alleges harm to his professional reputation and makes no allegation that the ADA's Expression of Concern is defamatory, his claim of defamation should also be dismissed on the alternative grounds that the Expression of Concern is protected opinion.

**CONCLUSION**

Plaintiff's Verified Complaint fails to set forth a *prima facie* claim for defamation because it does not allege that defendant, the American Diabetes Associations, was at fault in publishing an Expression of Concern regarding Dr. Saad's articles. Moreover, even if the Verified Complaint did allege fault, the alleged defamation is an opinion based on facts alleged to be true by plaintiff himself. For all of the foregoing reasons, the American Diabetes Association respectfully requests that this Court grant its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

AMERICAN DIABETES ASSOCATION
By its attorneys

 /s/ J. Mark Dickison
J. Mark Dickison (BBO# 629170)
    MDickison@Lawson-Weitzen.com
Joshua M. D. Segal (BBO# 678367)
    JSegal@Lawson-Weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, Massachusetts 02210
(617) 439-4990
(617) 439-3987 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served upon non-registered participants.

 /s/ J. Mark Dickison

**RULE 7.1 CERTIFICATION**

I, J. Mark Dickison, certify that I conferred with Plaintiff's counsel about the subject of this memorandum, and plaintiff opposes it.

 /s/ J. Mark Dickison
J. Mark Dickison

11