UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                       )
**MARIO J. A. SAAD, MD, PhD,**         )
                                       )
    **Plaintiff,**                     )
                                       )
v.                                     ) Civil Action No.:  15-cv-10267-TSH
                                       ) ORAL ARGUMENT REQUESTED
**AMERICAN DIABETES ASSOCIATION,**     )
                                       )
    **Defendant.**                     )
_____ )

**PLAINTIFF MARIO J. A. SAAD, MD, PhD's OPPOSITION TO
DEFENDANT AMERICAN DIABETES ASSOCIATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED.R.CIV.P. 12(c)**

**I.   INTRODUCTION**

This action was brought by Dr. Mario J. A. Saad, MD, PhD ("Dr. Saad") seeking damages for the defamatory statements that have been and continue to be made by the Defendant American Diabetes Association ("Defendant" or "Association") in its journal *Diabetes* relating to four (4) articles published by the Association in 2011, 2007, 2006 and 1997. Presently the Defendant seeks to dismiss Dr. Saad's claim pursuant to Fed.R.Civ.P. 12(c) (Docket #18 – filed 03/26/15) ("Defendant's Motion").

Plaintiff opposes Association's peremptory effort to dismiss this defamation action. Association's publication of the "expression of concern" at issue is actionable, because its scholarly audience can only perceive in the notice's peculiar affirmative statements and significant omissions that the influential publisher is aware of other undisclosed damning facts -- factual suppositions that are demonstrably (and alleged to be) untrue. On the Association's

own authorities, its notice thus is actionable even if it constitutes a statement of opinion, because such opinion relies on undisclosed and untrue factual suppositions.  Defendant's unreasonableness in publishing the notice also is apparent from the complaint and the reasonable inferences to be drawn from it.  The very omission of true material facts known to Association is considerable evidence of its fault.  Further, publication of the notice was not justified by any of the four criteria enumerated in the editorial ("COPE") standards to which Association admits it is subject and which are incorporated by reference in both the complaint and Association's Rule 12(c) motion papers.  Specifically, in terms of the only plausible criterion, as the sponsor university's investigation of the first two of Dr. Saad's articles was completed in one month, its pending investigation of the other two articles – also commissioned by Association – will not take a "considerable time" to conclude, as would be necessary to warrant an "expression of concern."

Despite Association's consternation, and its facile analogy to a run-of-the-mill "worst sportscaster ever" opinion piece, there is no valid basis to dismiss this libel action.  The court should withhold judgment on the merits at this early stage of proceedings, given the allegedly premature and negligently misleading statements contained in this critical notice by a scholarly journal.

II.     STANDARDS OF REVIEW

   A.     Fed.R.Civ.P. 12(c).

As recently stated by Judge Selya in <u>Shay v. Walters</u>, 702 F.3d 76 (1st Cir., 2012) "we rehearse the complaint's well-pleaded facts as if they were true, view those facts in the light

most hospitable to the party opposing the motion (here, the plaintiff), and draw all reasonable inferences in that party's favor." R.G. Fin. Corp. v. Vergara–Nuñez, 446 F.3d 178, 182 (1st Cir.2006).  *See also* Feliciano v. State of R.I., 160 F3d 780 (1st Cir., 1998) ("Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief."). [emphasis supplied] At this stage of the litigation dismissal pursuant to 12(c) is not warranted.

### B. Non-Public Figure – Negligence Standard.

"[W]e hold that a plaintiff who is not a public officer or a public figure may recover damages in an action for libel by proof of negligence in the publishing of the libel by the Association, its agents or servants, even though the libel occurred in the reporting of an event of public or general concern." Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 851, 330 N.E.2d 161, 164 (1975).  The Defendant has not claimed, because it cannot, that Dr. Saad is a public figure for the purposes of this litigation or that the applicable standard in this case is intentional misconduct.  While Dr. Saad's professional reputation within the medical community is important to him, he is not a public figure either by virtue of his position or by virtue his conduct.  He is not a "public figure" any more than the Association is the New York Times.

### C. Elements of Defamation.

The Defendant's Memorandum concentrates its linguistic shotgun on a single element. With one barrel, the Defendant claims that there are no circumstances that, either by direct statement or through reasonable inference, would result in the Defendant being held at fault in

3

publishing the EOC.  The Defendant then fires its other barrel by stating that even if it is at fault, the EOC is merely opinion.  Both shots miss their mark.

As stated in <u>Albright v. Morton</u>, 321 F.Supp.2d 130, 134 (D. Mass., 2004), "To maintain an action for defamation of a non-public figure, a plaintiff must allege facts to show that (1) a Association made a false statement "of and concerning" the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the Association was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss." *See* <u>Ravnikar v. Bogojavlensky</u>, 438 Mass. 627, 629-30, 782 N.E.2d 508 (2003); <u>Reilly v. Associated Press & Others</u>, 59 Mass.App.Ct. 764, 769, 797 N.E.2d 1204 (2003), *cert denied,* 441 Mass. 1103, 803 N.E.2d 333 (2004).[1]

III.   ARGUMENT

    A.   **The "Expression of Concern" is a Defamatory Statement of Fact by Virtue of both its Content and its Context.**

The Defendant asserts that Dr. Saad has "failed to allege that the ADA acted negligently" in publishing its EOC.  <u>Defendant's Memorandum</u>, at 1, 6.  The Association's analysis is deficient because it fails to address a more fundamental questions, which is whether the EOC is an actionable statement of fact by the Defendant.  It is such a statement.

---

[1] In <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 349-50, 94 S.Ct. 2997, 3012 (1974), it is stated: 'We need not define 'actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.' <u>Stone</u> at 859, 170.  Dr. Saad has claimed damage to his reputation and well as the potential for loss of grants for future research as a direct result of the Defendant's attack on his professional body of work.  Again, the Defendant has not challenged this element of Dr. Saad's claim.

As held by the Massachusetts Supreme Judicial Court, "(t)he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 341-42, 403 N.E.2d 376, 379 (1980) *citing* Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980).

The statements made within the EOC are actionable statements of fact, both individually as to each of Dr. Saad's articles, as well as collectively in the context of the entire EOC.

**B.      The EOC is an Actionable Defamatory Statement.**

From the outset the EOC raises "questions about the reliability of data." Whether or not data is reliable is a question of fact. As defined by Webster's[2], "reliability" means "the extent to which an experiment, test, or measuring procedure yields the same results on repeated trials." Thus, by definition, data is verifiable and reliability of data is the measured extent by which it may be verified. By repeatedly stating that the Association is questioning the reliability of data used by Dr. Saad in his articles, the Defendant is stating that Dr. Saad's test results cannot be trusted – in essence accusing him of lying.

---

[2] http://www.merriam-webster.com/dictionary/reliability

5

There are common elements in the remainder of the accusations.  The EOCs that address first two articles (2011 and 2007) start with the following statement:  "After readers of the journal contacted *Diabetes* about potentially duplicated and manipulated images . . . ."  The Defendant's review thus begins with hearsay statements by unidentified "readers".  These EOCs then conclude that "the Panel remains concerned about the reliability and credibility of some of the data presented in this article." [3]

The EOCs attack the third and fourth articles with even less evidence and greater certitude.  After again relying upon unidentified hearsay to target these articles, the Defendant impugns "the reliability of the data and <u>conclusions</u> presented in this [third] article" and "the reliability of the submitted evidence and the data and <u>conclusions</u> presented in this [fourth] article."  [emphasis provided].

"[A] cause of action for defamation may still be sustained where an opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion."  <u>Yohe v. Nugent</u>, 321 F.3d 35, 41 (1st Cir., 2003), *citing* <u>Nat'l Ass'n of Gov't Employees, Inc. v. Central Broad. Corp.</u>, 379 Mass. 220, 227-28, 396 N.E.2d 996 (1979); *see also* <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) ("[e]xpressions of opinion often imply an assertion of objective fact.").  The statements contained within the EOCs relating to the reliability and credibility of <u>both</u> the underlying data <u>and</u> evidence contained within the articles, as well as the conclusions presented, compel the reader to conclude that the Association possesses additional undisclosed material facts relevant to the articles as the basis for its attacks on Dr. Saad.

---

[3] Defined as "the quality of being believed or accepted as true, real, or honest."  http://www.merriam-webster.com/dictionary/credibility

More broadly, "[a] statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)." *See* McEneaney v. Chestnut Hill Realty Corp.*,* 38 Mass.App.Ct. 573, 650 N.E.2d 93, 96 (1995); *see also Restatement (Second) of Torts* § 539 (1977) (explaining that "[a] statement of opinion as to facts not disclosed [may] be interpreted ... as an implied statement that the facts known to the maker are not incompatible with his opinion"); *cf.* Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,* 127 F.3d 122, 127 (1st Cir. 1997).  "A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable."  Rodi v. Southern New England School of Law, 389 F.3d 5, 14 (1st Cir., 2004).

      C.      **The Defendant was at fault in publishing the EOC.**

The Association's publication of the EOC violates the very standards to which its EOC says it is bound and which it cites in its Memorandum.  These standards are well-known to the Association's 51,000 scholarly readers and institutions.[4]  The Association has implied that the publication of its EOC regarding Dr. Saad's articles was compelled by the standards imposed upon the Association by the Committee on Publications Ethics.[5]  Defendant's Memorandum, at 3.  *See also* EOC, Verified Complaint, **Exhibit L**: ("*Diabetes* is a member journal of the Committee on Publication Ethics (COPE) (publicationethics.org).  As such, the editors of the journal and the Association's Panel on Ethical Scientific Programs refer to COPE's guidelines and recommendations when reviewing such matters.")  A review of the guidelines cited by the

---

[4] Verified Complaint, ¶41.
[5] http://publicationethics.org/files/retraction%20guidelines.pdf

Defendant provides insight into its deliberate omission of certain facts which, if known by the Defendant's readership, would call into question the Defendant's motives for publishing the EOC.

The COPE Retraction Guidelines referenced by the Association in its Memorandum contain the following guidance relating to the publication of expressions of concern:

*"Journal editors should consider issuing an expression of concern if:*

- *They receive inconclusive evidence of research or publication misconduct by the authors*

- *There is evidence that the findings are unreliable but the authors' institution will not investigate the case*

- *They believe that an investigation into alleged misconduct related to the publication either has not been, or would not be, fair and impartial or conclusive*

- *An investigation is underway but a judgment will not be available for a considerable time"* [6]

As noted above, the readership of the Association's journal *Diabetes* consists of scientists and researchers who are familiar with the COPE guidelines, and understand those areas of concern, recited above, to cast doubt upon the research integrity of the authors. Applying these standards to the facts known to the Association at the time of publication as alleged in the Verified Complaint, it is clear that the intent of the EOC was not to alert its readership regarding the Defendant's 'opinion' of Dr. Saad's work, but to intentionally cast doubt upon Dr. Saad's body of work including those four (4) articles. Of the four guidelines, the

---

[6] See COPE Committee on Publication Ethics "Retraction Guidelines", attached hereto as **EXHIBIT 1**. This court may consider matters not contained within the pleadings if the material may be implied by reference from the material that was included. Rodi v. Southern New England School of Law, 389 F.3d 5, 12(1st Cir., 2004). As stated within the Defendant's letter to Dr. Saad's counsel, it is the fourth guideline upon which the Defendant relies.

Defendant apparently is relying upon the last: "an investigation is underway but a judgment will not be available for a considerable time." *See* <u>Verified Complaint</u>, **Exhibit K**. For some unknown reason the Defendant failed to advise its readership in the EOC that an investigation was fully underway by an independent body.[7] Instead, the Association advised its readership that, with respect to the 2006 and 1997 articles:

> The Association's Panel on Ethical Scientific Programs has recently contacted the authors' institution, the State University of Campinas (Sao Paulo, Brazil), to request an investigation into the reliability of the submitted evidence and the data and conclusions presented in [these] article[s].

In reality, the investigation had not only already been requested by the Association and agreed to by Dr. Saad and the University, but the Investigatory Commission already had begun its review by the time that the EOC was published on February 2, 2015.

The content of the EOC also fails to support the Association's rationale for its publication. The Association failed to advise its readership of the pendency of the Investigatory Commission's findings. Instead, the Defendant questioned the "reliability" of the "data and conclusions" of Dr. Saad's articles, instead of declaring that, as the Association stated in its January 29, 2015 letter, the "judgment [of the University] will not be available for a considerable time." <u>Verified Complaint</u>, **EXHIBIT K**. This deliberate omission on the part of the Association establishes the at-fault nature of the EOC.

---

[7] *See* <u>Verified Complaint</u>, ¶34. "Without waiting for the investigatory report of the March 9th and 10th 2015 I.C. (established to reevaluate 2011 and 2007 Articles and to evaluate the 2006 and 1997 Articles) the ADA posted the digital expression of concern on February 2, 2015 …"

### D. The Expression of Concern is Not Protected Opinion

#### 1. This Court has recognized that the Expression of Concern has a factual basis.

In its recent Order, this Court noted that "the statement [Expression of Concern] thoroughly sets forth the factual basis for the ADA's concerns." The statements made by the Defendant in its EOC, as they are capable of being proven true or false, constitute actionable factual statements.

The EOC questions the reliability and conclusions of Dr. Saad's work based upon "facts" presented to it by its own readers ("After readers of the journal contacted *Diabetes* about potentially duplicated and manipulated images . . ."). After Dr. Saad clarified these matters for the Association ("Dr. Saad stated that the misplacements were unintentional . . . ."), the Defendant was still "concerned," presumably about the reliability of data.

The Association then requested that Dr. Saad's university conduct an independent review (which it did). Although the University advised the Association that some of the data were presented in an incorrect manner, the university's investigation also concluded, that "Figure 3D in the study published in [*Diabetes*] is correct (the 2011 article)".

Moreover, what facts the Association <u>failed</u> to advise its readership are as significant. For example:

> As it regards position PG in 1841/2014, which refers to process 01P7723-2014, the inquiry commission gathered upon this date in room D-355 of the Institute of Chemistry, and it hence declares that there was not necessarily an intention on the actions which motivated the opening of this inquiry and that the methodology mistakes investigated did not compromise the results of publications under analysis. **It is therefore considered that no infringement was committed whatsoever to justify the opening of**

**administrative and disciplinary proceedings, or the application of penalties, and thus recommends the filing of the records.**[8]  [emphasis supplied]

The Association knew that the University had reviewed all of the relevant data, including the allegations made by Mr. Koehler regarding the images contained in the articles, had fully reviewed the University's Minutes [Verified Complaint, **Exhibit H**] and yet still published its EOC without reference to the University's conclusions.

IV.    CONCLUSION

The court should withhold judgment on the merits at this early stage of proceedings, given the allegedly premature and negligently misleading statements contained in this critical notice by a scholarly journal.  "The Supreme Court declared long ago that "the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The view that the pleading of cases is a game in which every miscue should be fatal is antithetic to the spirit of the federal rules." Rodi, at 20.  In this matter Dr. Saad should be given the fair opportunity to be heard with respect to his claim of defamation against the Association.

---

[8] See Verified Complaint, EXHIBIT H [Document 1-10 page 20 of 22] dated August 12, 2014 acknowledged as received by the Defendant in its Answer to the Verified Complaint [Document 16 page 4 of 8, ¶26].

## **REQUEST FOR ORAL ARGUMENT**

Plaintiff Mario J.A. Saad requests, pursuant to Local Rule 7.1(D), that this Court hear oral argument on this opposition.


Respectfully submitted by the Plaintiff, MARIO J.A. SAAD, MD, PhD,

By his attorneys,

*/s/ James T. Hargrove*
Steven J. Brooks, BBO# 059140
James T. Hargrove, BBO# 550975
Nicholas J. Dominello, BBO# 685637
**Deutsch | Williams | Brooks | DeRensis & Holland, P.C.**
One Design Center Place - Suite 600
Boston, MA  02210
(617) 951-2300
sbrooks@dwboston.com
jhargrove@dwboston.com
ndominello@dwboston.com

Dated: April 8, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 8, 2015.

*/s/ James T. Hargrove*

# EXHIBIT 1.



# RETRACTION GUIDELINES

**Summary**

Journal editors should consider retracting a publication if:

- they have clear evidence that the findings are unreliable, either as a result of misconduct (e.g. data fabrication) or honest error (e.g. miscalculation or experimental error)

- the findings have previously been published elsewhere without proper crossreferencing, permission or justification (i.e. cases of redundant publication)

- it constitutes plagiarism

- it reports unethical research

Journal editors should consider issuing an expression of concern if:

- they receive inconclusive evidence of research or publication misconduct by the authors

- there is evidence that the findings are unreliable but the authors' institution will not investigate the case

- they believe that an investigation into alleged misconduct related to the publication either has not been, or would not be, fair and impartial or conclusive

- an investigation is underway but a judgement will not be available for a considerable time

Journal editors should consider issuing a correction if:

- a small portion of an otherwise reliable publication proves to be misleading (especially because of honest error)

- the author / contributor list is incorrect (i.e. a deserving author has been omitted or somebody who does not meet authorship criteria has been included)

**Retractions are not usually appropriate if:**

- a change of authorship is required but there is no reason to doubt the validity of the findings

**Notices of retraction should:**

- be linked to the retracted article wherever possible (i.e. in all electronic versions)

- clearly identify the retracted article (e.g. by including the title and authors in the retraction heading)

- be clearly identified as a retraction (i.e. distinct from other types of correction or comment)

- be published promptly to minimize harmful effects from misleading publications

WWW.PUBLICATIONETHICS.ORG



# RETRACTION GUIDELINES

- be freely available to all readers (i.e. not behind access barriers or available only to subscribers)
- state who is retracting the article
- state the reason(s) for retraction (to distinguish misconduct from honest error)
- avoid statements that are potentially defamatory or libellous

**The purpose of retraction**

Retraction is a mechanism for correcting the literature and alerting readers to publications that contain such seriously flawed or erroneous data that their findings and conclusions cannot be relied upon. Unreliable data may result from honest error or from research misconduct.

Retractions are also used to alert readers to cases of redundant publication (i.e. when authors present the same data in several publications), plagiarism, and failure to disclose a major competing interest likely to influence interpretations or recommendations.

The main purpose of retractions is to correct the literature and ensure its integrity rather than to punish authors who misbehave.

**What form should a retraction take?**

Notices of retraction should mention the reasons and basis for the retraction, to distinguish cases of misconduct from those of honest error; they should also specify who is retracting the article. They should be published in all versions of the journal (i.e. print and/or electronic). It is helpful to include the authors and title of the retracted article in the retraction heading.

Retracted articles should be clearly identified as such in all electronic sources (e.g. on the journal website and any bibliographic databases). Editors are responsible for ensuring that retractions are labelled in such a way that they are identified by bibliographic databases (which should also include a link to the retracted article). The retraction should appear on all electronic searches for the retracted publication.

Retracted articles should not be removed from printed copies of the journal (e.g. in libraries) nor from electronic archives but their retracted status should be indicated as clearly as possible.

WWW.PUBLICATIONETHICS.ORG



# RETRACTION GUIDELINES

**Which publications should be retracted?**

If only a small part of an article reports flawed data, and especially if this is the result of genuine error, then the problem is best rectified by a correction or erratum. (The term erratum usually refers to a production error, caused by the journal. The term corrigendum (or correction) usually refers to an author error.) Partial retractions are not helpful because they make it difficult for readers to determine the status of the article and which parts may be relied upon.

Similarly, if only a small section of an article (e.g. a few sentences in the discussion) is plagiarised, editors should consider whether readers (and the plagiarised author) would be best served by a correction (which could note the fact that text was used without appropriate acknowledgement) rather than retracting the entire article which may contain sound, original data in other parts.

Retraction should usually be reserved for publications that are so seriously flawed (for whatever reason) that their findings or conclusions should not be relied upon.

If redundant publication has occurred (i.e. authors have published the same data or article in more than one journal without appropriate justification, permission or crossreferencing) the journal that first published the article may issue a notice of redundant publication but should not retract the article unless the findings are unreliable. Any journals that subsequently publish a redundant article should retract it and state the reason for the retraction.

If an article is submitted to more than one journal simultaneously, and is accepted and published in both journals (either electronically or in print) at the same time, precedence may be determined by the date on which a licence to publish or a copyright transfer agreement was signed by the authors.

In cases of partial overlap (i.e. when authors present some new findings in an article that also contains a substantial amount of previously published information) editors need to consider whether readers are best served if the entire article is retracted or whether it would be best to issue a notice of redundant publication clarifying which aspects had been published previously and providing appropriate cross-references to the earlier work. This will depend on the amount of overlap. Editors should bear in mind that the main purpose of retractions is to correct the literature and ensure its integrity rather than to punish authors who misbehave.

Only published items can be retracted. Guidelines on dealing with redundant publications identified in submitted manuscripts can be found in the relevant COPE flowchart [http://publicationethics.org/files/u2/01A_Redundant_Submitted.pdf]. Posting a final version on a website constitutes publication even if an article has not appeared (or will not appear) in print. If an article is retracted before it appears in the print version of a journal, the electronic version should be retained on the journal's website with a clear notice of retraction and it should be included on bibliographic databases (e.g. with a digital object identifier [doi] or other permanent citation that will locate it) even if it does not appear in the printed journal and therefore does not receive a page allocation. This is because electronic versions may already have been accessed and cited by researchers who need to be alerted to the fact that the article has been retracted.



# RETRACTION GUIDELINES

**Who should issue the retraction?**

Articles may be retracted by their author(s) or by the journal editor. In some cases, retractions are issued jointly or on behalf of the journal's owner (e.g. a learned society or publisher). However, since responsibility for the journal's content rests with the editor s/he should always have the final decision about retracting material. Journal editors may retract publications (or issue expressions of concern) even if all or some of the authors refuse to retract the publication themselves.

**When should a publication be retracted?**

Publications should be retracted as soon as possible after the journal editor is convinced that the publication is seriously flawed and misleading (or is redundant or plagiarised). Prompt retraction should minimize the number of researchers who cite the erroneous work, act on its findings or draw incorrect conclusions, such as from 'double counting' redundant publications in meta-analyses or similar instances.

If editors have convincing evidence that a retraction is required they should not delay retraction simply because the authors are not cooperative. However, if an allegation of misconduct related to a potential retraction results in a disciplinary hearing or institutional investigation, it is normally appropriate to wait for the outcome of this before issuing a retraction (but an expression of concern may be published to alert readers in the interim – see below).

**What should editors do in the face of inconclusive evidence about a publication's reliability?**

If conclusive evidence about the reliability of a publication cannot be obtained (e.g. if authors produce conflicting accounts of the case, authors' institutions refuse to investigate alleged misconduct or to release the findings of such investigations, or if investigations appear not to have been carried out fairly or are taking an unreasonably long time to reach a conclusion) editors should issue an expression of concern rather than retracting the publication immediately.

Such expressions of concern, like retraction notices, should be clearly linked to the original publication (i.e. in electronic databases and by including the author and title of the original publication as a heading) and should state the reasons for the concern. If more conclusive evidence about the publication's reliability becomes available later, the expression of concern should be replaced by a notice of retraction (if the article is shown to be unreliable) or by an exonerating statement linked to the expression of concern (if the article is shown to be reliable and the author exonerated).

**Should retraction be applied in cases of disputed authorship?**

Authors sometimes request that articles are retracted when authorship is disputed after publication. If there is no reason to doubt the validity of the findings or the reliability of the data it is not appropriate to retract a publication solely on the grounds of an authorship dispute. In such cases, the journal editor should inform those involved in the dispute that s/he cannot adjudicate in such cases but will be willing to publish a correction to the author/contributor list if the authors/contributors (or their institutions) provide appropriate proof that such a change is justified.

WWW.PUBLICATIONETHICS.ORG



# RETRACTION GUIDELINES

(For authorship disputes occurring before publication, see the relevant COPE flowcharts. http://publicationethics.org/files/u2/04A_Author_Add_Submitted.pdf and http://publicationethics.org/files/u2/04B_Author_Remove_Submitted.pdf)

Can authors dissociate themselves from a retracted publication?

If retraction is due to the actions of some, but not all, authors of a publication, the notice of retraction should mention this. However, most editors consider that authorship entails some degree of joint responsibility for the integrity of the reported research so it is not appropriate for authors to dissociate themselves from a retracted publication even if they were not directly culpable of any misconduct.

Are there grounds for legal proceedings if an author sues a journal for retracting, or refusing to retract, a publication?

Authors who disagree with a retraction (or whose request to retract a publication is refused) sometimes threaten journal editors with legal action. Concern over litigation can make editors reluctant to retract articles, especially in the face of opposition from authors.

Journals' instructions for authors should explain the retraction procedure and describe the circumstances under which articles might be retracted. This information should be incorporated (e.g. by references) into any publishing agreements and brought to the authors' attention. However, even if the publishing agreement or journal instructions do not set out specific conditions for retraction, authors usually would not have grounds for taking legal action against a journal over the act of retraction if it follows a suitable investigation and proper procedures.

However, legal advice may be helpful to determine appropriate wording for a notice of retraction or expression of concern to ensure that these are not defamatory or libellous. Nevertheless, retraction notices should always mention the reason(s) for retraction to distinguish honest error from misconduct.

Whenever possible, editors should negotiate with authors and attempt to agree a form of wording that is clear and informative to readers and acceptable to all parties. If authors consent to the wording of a retraction statement, this provides defence against a libel claim. However, prolonged negotiations about wording should not be allowed to delay the publication of a retraction unreasonably and editors should publish retractions even if consensus cannot be reached.



# RETRACTION GUIDELINES

*Further reading*

ICMJE guidelines: http://www.icmje.org/publishing_2corrections.html

Sox HC & Rennie D. Research misconduct, retraction, and cleansing the medical literature: lessons from the Poehlman case. Annals of Internal Medicine 2006;144:609-13

Nath SB, Marcus SC & Druss BG. Retractions in the research literature: misconduct or mistakes? MJA 2006;185:152-4

Budd JM. Sievert M, Schultz TR. Phenomena of retraction. JAMA 1998;280:296-7

© 2009 COPE. This is an open-access article distributed under the terms of the Creative Commons Attribution License, which permits unrestricted use, distribution, and reproduction in any medium, provided the original author and source are credited.

September 2009
Elizabeth Wager, Virginia Barbour, Steven Yentis, Sabine Kleinert
on behalf of COPE Council

WWW.PUBLICATIONETHICS.ORG