UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO J.A. SAAD, MD PhD,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN DIABETES ASSOCIATION,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 15-10267-TSH |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Docket No. 18)**

**August 18, 2015**

**HILLMAN, D.J.**

Plaintiff Mario J.A. Saad, MD, PhD, ("Dr. Saad") asserts a single count of defamation against Defendant American Diabetes Association (the "ADA"). The ADA has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Docket No. 18). For the following reasons, the motion is ***granted***.

**Background**

Viewing the pleadings in the light most favorable to Dr. Saad for purposes of this motion, the relevant facts are as follows. Dr. Saad is a professor of medicine employed by the State University of Campinas in São Paulo, Brazil. *See* Pl.'s Compl. ¶ 6. He has published over 200 articles in scholarly journals, four of which appeared in the ADA's prominent research publication, *Diabetes*, in 2011, 2007, 2006 and 1997, respectively. *Id.* at ¶¶ 12-16. In March 2014, the ADA's Subcommittee on Ethical Scientific Publications ("ESP") informed Dr. Saad that his 2011 and 2007 articles "appear to contain instances of image manipulation and

1

duplication that violate the journal's publication policies." *Id.* at ¶ 17. Dr. Saad was provided an opportunity to respond, but his explanation did not resolve the ADA's doubts about the reliability of the data in the articles. *Id.* at ¶ 19.

In April 2014, the ADA contacted the State University of Campinas regarding their concerns about Dr. Saad's work, and the University appointed an "Inquiry Commission" to investigate the matter. *Id.* at ¶¶ 20-21. In June 2014, the Inquiry Commission concluded that "mistakes had occurred in the treatment of the digital images, identification methods, storage and manipulation of the laboratory images." *Id.* at ¶ 23. However, the Commission also found that, despite the mistakes, the results of the 2007 and 2011 articles were valid and there was no evidence of dishonesty on the part of Dr. Saad. *Id.* In October 2014, the ADA informed Dr. Saad that the ESP would review the Inquiry Commission's report, and that it had received new image duplication allegations regarding the 2006 and 1997 articles. *Id.* at ¶ 27. Again, Dr. Saad provided a response to the allegations. *Id.* at ¶ 28. In December 2014, upon completing the review of the Inquiry Commission's investigation and Dr. Saad's response, the ADA informed Dr. Saad that *Diabetes* would publish an "Expression of Concern" both online and in the print issue of the journal. *Id.* at ¶ 30. The ADA posted a digital expression of concern on February 2, 2015 and also published a hard copy of the expression of concern later that month. *Id.* at ¶ 34.

Dr. Saad filed this complaint on February 5, 2015, asserting one count of defamation. The complaint attached and incorporated the ADA's Expression of Concern. *See* Expression of Concern, Docket No. 1-14. Dr. Saad initially sought a temporary restraining order and preliminary injunction against the ADA to prevent the hard copy publication of the Expression of Concern. The Court denied the emergency relief on the grounds that it amounted to an unconstitutional prior restraint. (Docket No. 10). Subsequently, Dr. Saad moved for

reconsideration on the ground that the expression of concern had already been published and therefore injunctive relief would not be a prior restraint. The Court found that Dr. Saad failed to prove a likelihood of success on the merits of his defamation claim and therefore denied the motion for reconsideration. (Docket No. 17). On March 26, 2015, the ADA moved for judgment on the pleadings. (Docket No. 18).

## Discussion

### *Standard of Review*

This Court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Thus, the court views "the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw[s] all reasonable inferences in [that party's] favor." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). Dismissal is only appropriate if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a "plausible entitlement to relief." *Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp. 2d 46, 49-50 (D. Mass. 2013) (citing *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007)).

### *Analysis*

The ADA asserts that the pleadings fail to establish the requisite elements for a prima facie claim of defamation. In order to recover on a defamation claim, a plaintiff must show "that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." *Stanton v. Metro Corp.*, 438

F.3d 119, 124 (1st Cir. 2006). Under Massachusetts law, "an expression of 'pure opinion' is not actionable" for defamation. *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 526 n.11, 984 N.E.2d 755 (2013). Therefore, a statement generally must contain an "objectively verifiable assertion," to be defamatory. *See Levinsky's, Inc. v. Wal-Mart Stores Inc.,* 127 F.3d 122, 127 (1st Cir. 1997). "[A] statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) (internal quotations omitted).

However, couching a statement as an opinion will not automatically protect the speaker from liability. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 F.U. 1, 16, 110 S. Ct. 2695 (1990)). An action for defamation may lie where the statement implies the existence of underlying, undisclosed defamatory facts. *See Yohe v. Nugent,* 321 F.3d 35, 41 (1st Cir. 2003). But if the speaker communicates the non-defamatory facts that undergird his opinion, the statement is not actionable. *Id.* at 42; *see also Howell v. Enter. Publ'g Co.,* 455 Mass. 641, 671–72, 920 N.E.2d 1 (2010). "[T]he relevant question is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact." *Phantom Touring, Inc. v. Affiliated Publication*, 953 F.2d 724, 727 (1st Cir. 1992). This "requires an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and any cautionary terms used by the person publishing the statement." *Piccone*, 785 F.3d at 771.

The Court has little trouble concluding that the ADA's Expression of Concern is not actionable for defamation. Self-evidently, the document expresses the concern of the ADA about

the reliability of the data in the four articles published by Dr. Saad in 2011, 2007, 2006, and 1997. *See* Expression of Concern, Docket No. 1-14. The document clearly discloses the basis for the concerns, stating that the ADA chose to issue the Expression of Concern "to alert readers to questions about the reliability of data [in the articles]" because "[t]he editors of *Diabetes* were made aware by readers of the journal [that the articles contained] potentially duplicated and manipulated images." *Id.* at 1. The Expression of Concern goes on to describe, in substantial detail, the steps the ADA took to contact the articles' authors and their home institution. *Id.* at 1-3. The document also describes the findings of the University's Inquiry Commission as they pertain to the 2011 and 2007 articles, and discloses that the ADA asked the University to investigate the reliability of data in the 2006 and 1997 articles. *Id.* The ultimate conclusion of the Expression of the Concern was merely that, based on the inaccuracies found by the Inquiry Commission, the ADA "remains concerned about the reliability and credibility of some of the data presented" in Dr. Saad's articles. *Id.* at 2. The ADA also noted that it would "make final decisions on these articles after the journal obtains more information." *Id.* at 1.

The Court finds that the Expression of Concern is a statement of the ADA's opinion of Dr. Saad's work, and is not actionable as defamation. It amounts only to a statement of the ADA's evolving, subjective view or interpretation of its investigation into inaccuracies in certain images contained in the articles. Dr. Saad has not identified a single passage of the Expression of Concern that is false and defamatory. The statement does not accuse Dr. Saad of dishonesty or conclude that he engaged in misconduct. In an attempt to sustain this action, Dr. Saad asserts that whether the data in his articles is reliable is an objectively verifiable fact. However, the Expression of Concern does not state that his data is not reliable. It merely alerts readers to the fact that the ADA "remains concerned" about recent questions regarding the data's reliability,

and that the ADA is in the process of investigating further. Similarly, the Court rejects Dr. Saad's argument that the statement implies the existence of undisclosed defamatory facts. The document plainly discloses the non-defamatory facts undergirding its opinion: readers of the journal made the ADA aware of "potentially duplicated and manipulated images," and the University Inquiry Commission confirmed the suspected inaccuracies. Moreover, the statement is measured and professional in its tenor; it describes in detail the steps the ADA took to investigate; and it plainly states that final decisions would be made after the ADA obtains more information. This is the type of cautionary language that suggests a statement of opinion rather than a defamatory falsehood. *See Piccone*, 785 F.3d at 771.

The Court's conclusion that the Expression of Concern is not actionable is further buttressed by the context in which it was issued: ongoing scientific discourse. The Second Circuit confronted a similar situation in *ONY v. Cornerstone Therapeutics, Inc.*, in which the court found statements made in the context of scientific academic debate to be non-defamatory. 720 F.3d 490, 496-498 (2d Cir. 2013). The court observed that where "a statement is made as part of an ongoing scientific discourse about which there is considerable disagreement, the traditional dividing line between fact and opinion is not entirely helpful," because such statements often constitute matters of verifiable fact. *Id.* at 497. However, it was clear to the Second Circuit that "for purposes of . . . defamation, they are more closely akin to matters of opinion, and are so understood by the relevant scientific communities." *Id.* The same goes for the ADA's Expression of Concern, which was published in a medical journal "to alert readers to questions about the reliability of data" in four specific articles. *See* Expression of Concern, Docket No. 1-14, at 1. The dispute between Dr. Saad and the ADA over the reliability of the data in his articles is not fit for resolution in the form of a defamation lawsuit. Instead, this is a case

6

where "the trial of ideas plays out in the pages of peer-reviewed journals, and the scientific public sits as the jury." *ONY*, 720 F.3d at 497.

Because the Court finds that the Expression of Concern is a statement of opinion that is not actionable for defamation, the Court will grant Defendant's motion for judgment on the pleadings.

## Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is ***granted***. This case is dismissed.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**